LEANDER DEVELOPMENT CORPORATION et al. v. TAFT-BUICK CORPORATION.

No. 380.

Circuit Court of Appeals, Second Circuit.

July 7, 1930.

Thomas Ewing, Edmund Quincy Moses, and Clarence M. Crews, all of New York City, for plaintiffs-appellants.

John Thomas Smith, of New York City (Melville Church and Clarence B. Des Jardins, both of Washington, D. C., of counsel), for defendant-appellant.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Both plaintiffs and defendant appeal. Plaintiffs appeal from that part of the decree holding patent No. 1,275,654, granted August 13, 1918, for temperature indicating means for motorcars, invalid, and defendant appeals from that part holding patent No. 1,206,783, granted November 28, 1916, for temperature indicating system and apparatus for internal combustion engines, valid and infringed.

The patents were issued to Boyce, who assigned them to the Leander Development Corporation, and the Motometer Company, Inc., is the exclusive licensee. Patent No. 1,275,654 was a broad grant. No. 1,206,783 was granted as a division of an earlier application filed June 20, 1914.

No. 1,275,654 shows a thermometer of the liquid column type mounted in the filler cap of an automobile radiator with the bulb located about two-thirds of the way down in the filler neck. In operation, the thermometer bulb is located in the air space above the water in the radiator. The indicating columns of the thermometer project above the radiator cap so as to be visible and readable to one sitting in the driver's seat. Claims 4 and 5 of this patent are in suit. They provide (claim 4) means for indicating the thermal condition of the engine of an automobile having an internal combustion engine provided with a liquid circulation cooling system comprising the combination (1) with the cooling system (2) of an indicating device (a) having an indicating part readable from the driver's seat of the automobile (b) and having a temperature responsive element located in a position to be influenced by changes of temperature within the cooling system. Claim 25 provides:

"In combination with a vehicle, having an internal combustion propelling motor, a fluid containing means associated therewith so as to be influenced by temperatures of the motor structure and means for showing normal and undesirable conditions of the power plant, comprising a part mounted in temperature-responsive relationship to the fluid-containing means to be controlled by the changes in the temperature of said motor structure, and a sight indicator part associated with said first mentioned part, adapted to be affected by the changing temperature conditions of the latter and located to be read by the operator of the vehicle while driving the same, said indicator part being adapted to present varying indications normally to serve as a guide for the operator in driving the motor at proper temperatures and abnormally as a warning to prevent or overcome undesirable conditions in the power plant."

Patent No. 1,206,783 covers the use of a distant reading thermometer to indicate the temperature of the water in the engine cooling system with the bulb inserted in the cooling water in the pipe leading from the cylinder jackets to the top of the radiator and the dial mounted on the instrument board of the car. All claims are in suit, but claim 2 is typical, and is as follows:

"2. In temperature indicating means for water cooled internal combustion motors of motor vehicles, the combination with a motor and the water circulation cooling system thereof, of a temperature-responsive element located in said system above the level of the hottest part of a motor cylinder, and in a position to be normally in contact with the cooling liquid after it has been heated by such hottest part, and to be subjected to contact with any steam which may be generated in the system due to the heat in the cylinder, and temperature-indicating means observable by the driver when operating the vehicle, said temperature indicating means being controlled by the temperature of said temperature-responsive element."

Boyce was granted a third patent No. 1,090,776, on March 17, 1914, which has been sustained [Boyce v. Stewart-Warner Speedometer Corp., 220 F. 118 (C. C. A. 2); Pyrene Mfg. Co. v. Boyce, 292 F. 480, 481 (C. C. A. 3); Id., 1 F.(2d) 185 (C. C. A. 3)] on the theory that there was invention in the particular location of this thermometer bulb—putting it in the air space above the water rather than directly in the water of the cooling system. The so-called "quick jump action" of the thermometer was the dominant and vital characteristic of this invention (No. 1,090,776) as the courts held. In the patents in suit, the thermometer indicator re-

cords the water temperature as it warms up or cools down in the cooling system.

We think the court below properly held claims 4 and 25 of patent No. 1,275,654 invalid because of Fowler's earlier conception. Fowler's patent was granted November 9, 1915, on an application filed February 24, 1913. His filing date was four months subsequent to the filing date of the first Boyce application, October 17, 1912, but Boyce offered no substantial proofs to carry back his date of invention. Defendant, however, offered evidence of many witnesses and record proof carrying Fowler's date of invention back to September, 1911. Fowler disclosed a conventional water cooling system for an automobile engine and the thermometer well mounted on the dash. The well was a hollow cylinder connected by tubes with the intake water manifold and the outlet water manifold respectively of the water cooling system. The result of thus connecting the thermometer well is that the water in the circulating system is by-passed through it. As the temperature of the water in the cooling system varies, the temperature of the water that is by-passed varies also, and therefore the temperature of the water in the well is an index to the temperature of the water in the cooling system. To determine the temperature of the water in the well, Fowler provided an ordinary glass liquid column thermometer which was mounted on the well with a bulb in the water thereof and the column located on the dash so as to be visible from the driver's seat. It is clear that part of the water in the circulating system of Fowler's device passed in and out of the well and the thermometer indicated the temperature of the water in the well. Whether or not this was the most effective means of determining the temperature of the water in the system or reporting troubles that might arise in the circulating system, the claims in suit are of broad terminology, and Fowler came within them, for he provided means for indicating the thermal condition of the engine of an automobile having an internal combustion engine provided with a liquid circulating cooling system, comprising a combination with the cooling system of an indicating device having an indicating part readable from the driver's seat of the automobile and having a temperature responsive element located in a position to be influenced by changes of temperature within the cooling system. Fowler describes his plan in the patent granted to him. He also establishes the date of construction and beginning the use of his equipment, by his testimony, as early as September, 1911, about a year prior to the earliest date of Boyce. This is sufficient to support the defense of invalidity because of such prior conception and practice by Fowler, and invalidates this patent in suit. The court below properly held prior conception was established.

We are also of the opinion that No. 1,-206,783 is shown by this record to be invalid because of the prior use disclosed by the Locomobile Company use. In 1910, the Industrial Instrument Company of Foxboro, Mass., manufactured distant reading thermometers of the vapor pressure type. They were the adaptation of a pressure measuring element, connected to a sealed stem, which is partially filled with volatile liquid, and, when temperature is applied to the bulb, the vapor pressure increases and it is measured by the pressure indicating element. The main advantage in the use of that principle of thermometer was explained to be the obtaining of long-distance reading—that is, the indicating part on the instrument was located at some distance from the point of measurement. It had a dial which could easily be read. This was described in a catalogue used in April, 1911. In June, 1910, three distant reading thermometers were sold to the Locomobile Company. This is sufficiently established. These instruments were produced at the trial. In August, 1910, two such instruments were ordered for automobile use and shipped in September, 1910. The plaintiffs' expert testified that they did not materially differ from those used by the defendant. They were put to use and tests were made on the road. It involved taking the temperature of the cooling water as it entered and left the radiator. The testimony of men who used these for the Locomobile Company described the operation and method of use as having the dial located on the dashboard and affixed thereto a bulb located on the radiator, one at the top and the other at the bottom. The engineers inserted the bulb in the top of the radiator or water return pipe. They were used both in road tests and block tests. The time is adequately established, but the plaintiffs say this was but an experimental use. The engineers were not trying to find out whether the thermometers would be effective to indicate the temperature in the engine cooling system. There could be no doubt as to that, for they could rely upon them as scientific apparatus to indicate the temperature. The instruments were used in studying the radiator and the

engine cooling system as a guide to better engineering practice and in the construction of radiators. If trouble developed, they would indicate it. They were applied to automobile engines and used as instruments to measure the temperature of the cooling water as to-day they are used to measure the temperature of the water. The same means was used in this Locomobile use as in Boyce and in both applied to a cooling system for an automobile. In both the thermometer had a dial on the dash and showed to the driver the variations in the temperature of the water in the engine cooling system.

It is not a distinction to say that the driver makes a different use of the information he now acquires than did the engineer of the Locomobile Company. There was no difference in the use to which the thermometer equipment was put. Boyce's object was for the driver to ascertain whether the engine cooling system and radiator was functioning properly. The Locomobile engineers studied variation in temperature to find out whether the radiator or engine cooling system was of proper design. The object of such use can have no legal significance in the matter of patentability. The caliber of mentality reading the instrument or indicator does not affect patentability. The apparatus is always the same no matter what type of mentality reads it. To every reader of the indicator, it was a source of information that all was well or that some trouble existed in the cooling system or the engine.

■ The court below distinguished Boyce's device from the Locomobile installation because the latter was not used as a trouble indicator. The claims are not thus restricted; they are not "trouble indicating" means, but are called temperature indicating means. "Trouble indicator" may not be read into the claim. McCarty v. Lehigh Valley R. R., 160 U. S. 110, 16 S. Ct. 240, 40 L. Ed. 358.

■ The Boyce practice cannot be distinguished from that of the Locomobile Company, since the means was old and putting it into a new use did not involve invention. Ansonia Co. v. Electrical Supply Co., 144 U. S. 11, 12 S. Ct. 601, 36 L. Ed. 327; Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F. (2d) 823 (C. C. A. 2); Aeolian Co. v. Wanamaker, 234 F. 90 (C. C. A. 2). The cases referred to by the court below are not in point. Railroad Supply Co. v. Hart Steel Co., 222 F. 261 (C. C. A. 7), was reversed in 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148. General Electric v. Sangamo Elec. Co., 174 F. 246 (C. C. A. 7), has no bearing on the question. In Justi v. Clark, 108 F. 659 (C. C. A. 7), and Barry v. Harpoon Castor Mfg. Co., 209 F. 207 (C. C. A. 2), the prior art devices were shown to require very substantial changes to apply them to the new use.

■ Moreover, the prior conception of Fowler referred to above has equal anticipatory significance as applied to this patent. To be sure, it does not show a distant reading thermometer with a bulb located in the water return manifold and dial located on the dash. The testimony does show a use on his car in 1913, by Fowler, of a distant reading thermometer having a bulb in the manifold connecting the water jacket with the top of the radiator, and the dial located on the dashboard of the motorcar. This was about a year prior to the filing of the application from which the divisional application for Boyce's patent, No. 1,206,789, was carved out and prior to the earliest date claimed by Boyce for this inventive idea. There is not only ample oral testimony, but the records and physical exhibits established beyond a reasonable doubt that Fowler and his associate Dahn extended the number of mechanical thermometers obtained from the Standard Thermometer Company and installed and used them with the bulb in the water outlet manifold with the dial on the dash. This they did in the summer and fall of 1913. There was a difference in the type of distant reading thermometer however; Boyce's was a vapor pressure type while Fowler's was a by-metallic strip type. There is no invention in substituting one well-known type of instrument for another. Fowler's was manufactured ahead of Boyce's, whose earliest date was March 16, 1914.

■ This patent is invalid because of the prior conception by Fowler and the prior use by the Locomobile Company which disclosed Boyce's claimed invention and taught the usefulness of the distant reading temperature indications.

The decree is modified, affirming its directions in reference to patent No. 1,275,654, and reversed as to patent No. 1,206,783, with directions to dismiss the bill.

Decree modified.