## TROPIC–AIRE, Inc., v. CULLEN–THOMP-SON MOTOR CO.

### No. 1905.

Circuit Court of Appeals, Tenth Circuit.
Nov. 6, 1939.

Rehearing Denied Dec. 19, 1939.

Harold Olsen, of Chicago, Ill. (Morrison Shafroth, of Denver, Colo., on the brief), for appellant.

Drury W. Cooper, of New York City (John A. Blair and Harness, Dickey & Pierce, all of Detroit, Mich., and Frederick Sass, of Denver, Colo., on the brief) for appellee.

Before LEWIS, PHILLIPS, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from a decree of the United States District Court of Colorado, dismissing for want of equity appellant's bill of complaint, charging an alleged infringement of all claims except Claim 8 of Reissue Letters Patent No. 17,131, dated November 13, 1928, to Tropic-Aire, Inc., as assignee of Orville S. Caesar. The patent in suit is a reissue of Patent No. 1,-668,490, granted May 1, 1928. The court held Reissue Patent No. 17,131 invalid on the ground of non-invention, and the further ground that the claims of the patent were so limited by the prior art that appellee's device was no infringement thereof.

The objects of the patent are stated as follows:

"This invention relates to new and useful improvements in apparatus for heating the interiors of automotive vehicles such, for instance, as sedans and buses, and an object of the invention is to provide such an apparatus comprising a heating member having a connection with the water-circulating system of the vehicle engine

whereby hot water will be circulated through the member, means being provided in connection with the heating member for forcing the air within the vehicle body therethrough to heat it and to keep such heated air in continuous circulation within the vehicle body.

"A further object of the invention is to provide an air-heating member adapted to be mounted within a vehicle body and having a connection with the water-circulating system of the engine and, further, having means for diverting substantially all or a portion of the water through the heating member to heat the interior of the vehicle body.

"A further object is to provide such an apparatus including an air-heating member comprising a plurality of horizontally disposed, spaced tubes, each adapted to be surrounded by water, said member having means for connecting it to the water-circulating system of an internal combustion engine, whereby a circulation of hot water may be established therethrough, a valve being interposed in the connection between the intake and discharge conduits of the heating member whereby the flow of water through the heating member may be controlled.

"A further object is to provide a combination hot water and air-heating apparatus for automotive vehicles, comprising a heat-radiating member having an electrically operated fan mounted adjacent thereto for circulating the air within the vehicle body through the heating member, and means such as a rheostat for controlling the speed of the motor-driven fan whereby the circulation of heated air within the vehicle body may be controlled independently of the vehicle engine.

"A further object is to provide a hot water heating member, comprising a plurality of horizontally disposed tubes arranged in spaced parallel relation, whereby water-circulating passages will be provided between the tubes and each tube will be completely surrounded by water, thus providing a heating member which will quickly heat the air circulated through the tubes by the action of the fan or blower means mounted adjacent to the heating member.

"A further object is to provide a heating apparatus for automotive vehicles of simple and inexpensive construction, comprising few parts, and, which may readily and quickly be installed in a vehicle and connected to the usual water-circulating system thereof, in a comparatively short period of time without the necessity of having to make numerous alterations to the usual connections or fittings of the vehicle engine."

What shall be construed as an invention within the meaning of the patent laws is always difficult of determination. Fine distinctions have been drawn between inventive genius and mechanical skill. Justice Brown, speaking for the Supreme Court of the United States, said:

"The truth is, the word cannot be defined in such manner as to afford any substantial aid in determining whether a particular device involves an exercise of the inventive faculty or not. In a given case we may be able to say that there is present invention of a very high order. In another we can see that there is lacking that impalpable something which distinguishes invention from simple mechanical skill. Courts, adopting fixed principles as a guide, have by a process of exclusion determined that certain variations in old devices do or do not involve invention; but whether the variation relied upon in a particular case is anything more than ordinary mechanical skill is a question which cannot be answered by applying the test of any general definition." McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 78, 35 L.Ed. 800.

■ The statutes of the United States provide that anything to be patentable must be new and useful. 35 U.S.C.A. § 31. Novelty and utility are therefore two essential requisites to patentability.

It is not claimed that this patent brings into existence new elements, but rather that Caesar combined old devices and elements in such a way as to produce a new result. As against this, appellee contends that Caesar in his patent produced nothing new; that he brought into existence no new elements or new combinations of old elements to produce a new result so as to meet tests of invention; that all Caesar did was to apply mechanical skill to an old device to produce an improved result; and that any skilled mechanic could have arranged these known elements in the same way in which they were arranged by Caesar and produced the same results.

Courts have laid down numerous tests to determine combination patentability. In Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L.Ed. 241, the court said: "Merely bringing old devices into juxtaposition, and

there allowing each to work out its own effect without the production of something novel, is not invention."

In Mallon v. William C. Gregg & Co., 8 Cir., 137 F. 68, 76, the court said: "The application of an old device to a new use is not in itself an invention or capable of protection by a patent. * * * It is only when the new use is so recondite and remote from that to which the old device has been applied, or for which it was conceived, that its application to the new use would not occur to the mind of an ordinary mechanic, skilled in the art, seeking to devise means to perform the desired function, with the old machine or combination present before him, that its conception rises to the dignity of invention."

█ █ Merely combining old devices, each performing its old function and working out its own effect, without producing anything novel or new as a result of the combination is not patentable. Adams v. Bellaire Stamping Co., 141 U.S. 539, 12 S.Ct. 66, 35 L.Ed. 849; Ide v. Ball Engine Co., 149 U.S. 550, 13 S.Ct. 941, 37 L.Ed. 843. Neither is it invention to use an old machine for a new purpose. Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267; Western Willite Co. v. Trinidad Asphalt Mfg. Co., 8 Cir., 16 F.2d 446; Ford Motor Co. v. Parks & Bohne, 8 Cir., 21 F.2d 943; Pearce v. Mulford, 102 U.S. 112, 26 L.Ed. 93; Florsheim v. Schilling, 137 U.S. 64, 11 S.Ct. 20, 34 L.Ed. 574; C. & A. Potts & Co. v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275.

What Caesar did was to place inside an automobile a unit consisting of a small hot water radiator with a small electric fan placed behind it to blow the hot air into the car. The fan was connected with the battery of the automobile and a control button placed on the dash of the automobile. He installed a small rheostat switch which permitted the fan to be operated at variable speeds. It is not contended that the rheostat or the variable speed of the fan is necessary to the successful operation of the Ceasar unit. He connected the radiator, installed in the car, with the circulatory system of the engine in such a way that hot water was taken from the engine cooling system and conducted through this small radiator and then back into the water system of the automobile, thereby obtaining a supply of hot water for the radiator installed in the car. The

result was a hot water heating system capable of heating the interior of the car.

When Caesar entered this field, he did not enter a virgin field. He devoted his attention to a subject which had received the consideration of inventors and skilled mechanics for many years. Heating interior space by means of hot water circulated through radiators was old when Caesar gave his attention to this subject. The records of the patent office are replete with patents, dating back many years, dealing with this problem. It is necessary to consider only a few of these.

Sturtevant's patent, No. 92,490, was granted in 1869. This patent shows a liquid receiving chamber with tubes through it, with a blower attached so as to blow hot or cold, depending upon the contents of the receiving chamber.

Frank's patent, No. 1,295,151, was granted in 1919. This shows a heating unit consisting of a radiator similar to Caesar's and an electric fan to blow air through it for heating purposes.

Anderson's patent, No. 1,439,857, was issued in December, 1922. It provided for heating the interior of a closed automobile by hot water heaters located in the interior of the passenger compartment and connected with the engine jacket cooling system by suitable piping. The heater was connected with the engine cooling system in the same way in which appellee's heaters are connected. Anderson's system also shows a thermostat. Anderson's system did not have an electric fan. It did, however, provide for the circulation of heated air in the closed passenger compartment and in contact with the heaters by convection.

Application for Modine's patent, No. 1,666,907, was filed in 1923 and the patent was issued in 1928. This shows a heating device similar to the Caesar patent. It consists of a radiator in front and an electric fan behind, causing a flow of air through it and thus giving out a blast of hot air to heat the chamber in which it was installed. According to the description of this patent, it has among its objects the production of a device that is simple, compact, convenient, of light weight, durable, efficient and satisfactory, and which may be installed at any desired point. The Modine heaters were made largely to be used in larger rooms. The radiator was connected with the water circulatory sys-

tem, thereby causing hot water to circulate through the radiator, heating the air, and the electric fan was used to blow the heated air into the chamber to be warmed.

It is difficult to distinguish between the Modine heating unit and the Caesar heating unit. The Modine unit was produced largely for the heating of rooms and larger spaces, such as offices. The size of the radiator was determined entirely by the size of the space to be heated. There is nothing, however, in the Modine unit which would make it inadaptable to use in an automobile. The only thing that would be required would be to reduce the size of the radiator to fit the size of the compartment of the car to be heated and attach it to the circulatory system of the engine.

■ A mere carrying forward of a known principle, or change in form, size, proportions or degree, or doing the same thing in the same way by substantially the same means, with better results, is not in itself invention. Belding Mfg. Co. v. Corn Planter Co., 152 U.S. 100, 14 S.Ct. 492, 38 L.Ed. 370; Roberts v. Ryer, supra; Woodbury Patent Planing-Machine Co. v. Keith, 101 U.S. 479, 25 L.Ed. 939; Oliver-Sherwood Co. v. Patterson-Ballagh Co., 9 Cir., 95 F.2d 70.

■ Neither is it invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not. Roberts v. Ryer, supra; Pennsylvania R. R. v. Locomotive E. S. Truck Co., 110 U.S. 490, 4 S.Ct. 220, 28 L.Ed. 222; Powers-Kennedy Contracting Co. v. Concrete Co., 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278; Ford Motor Co. v. Parks & Bohne, 8 Cir., 21 F.2d 943; Leander Development Co. v. Taft-Buick Corp., 2 Cir., 42 F.2d 823.

■ It is contended by appellee that the claims of Caesar's patent were so limited by the prior art that his device did not constitute an invention, nor was appellee's device an infringement thereof. The prior art is a field not open to discovery. Novelty justifying a patent must be found outside that field. No matter what the discovery asserted or claimed in the patent, such assertion or claims must be held to be limited so as to exclude the prior art. Smith v. Mid-Continent Inv. Co., 8 Cir., 106 F.2d 622, decided September 12, 1939.

Applying this test of patentability to Caesar's device, it falls short of invention.

■ There is no question but that Caesar did design a heating unit which was practical and efficient, but after all, all that he did was to take the elements which had been in use for many years, without introducing a new element, and adapt them to the heating of an automobile. All that has to be done is to reduce the size of the Modine heating unit and it could be used to heat the interior of an automobile. It could be connected to the water system of an automobile engine with the connections used by Caesar and could be made to work in the Caesar unit. It is, therefore, difficult to see wherein Caesar combined old elements so that they qualify each other or so that the combination creates either a new machine of a distinct character and function or produces a result due to the joint and cooperating action of all the elements which is not the mere adding together of separate contributions.

■ It is contended that in a doubtful case the fact that a patented article had gone into general use is evidence of its utility and should be considered. But where, as here, there is no invention, the extent of the use is not a matter of moment. Adams v. Bellaire Stamping Co., 141 U.S. 539, 12 S.Ct. 66, 35 L.Ed. 849; Freyn Engineering Co. v. Coe, 65 App.D.C. 9, 79 F.2d 134.

It is said that while it is contended that Caesar did not do anything that any skilled mechanic could not do, nevertheless the fact remains that it did not occur to any of the thousands of mechanics to do it, but that it did occur to Caesar and that the tremendous sale the Tropic-Aire heater has is evidence of the fact that his patent had utility other than that possessed by other prior patents. It is true that while all the elements entering into the Caesar device were known, their use in an automobile did not occur to any of the other skilled mechanics prior to its occurring to Caesar. But that is not the test. In all these instances, the combination must occur to someone first. The fact that it occurred to Caesar before it occurred to some other mechanic did not raise this combination of known elements to the dignity of invention. Here the elements were all known. To combine them as they were used by Caesar may have been useful, but it does not raise what he did to the plane of invention. Berlin Mills Co. v. Proctor & Gamble Co., 254 U.S. 156, 41 S.Ct. 75, 65 L.Ed. 196.

The success of any water heating system depends upon the ability to maintain a constant heat in the circulatory system of the engine. The thermostat in the cooling system of automobile engines came into use about the time of Caesar's patent. New and improved types of closed automobile bodies were also perfected near this time. These factors contributed materially to the success of the water heating principle in automobiles and made it popular. It is stated that the Caesar heating unit will work independent of thermostatic control. No doubt it will raise the temperature of the car to some extent, but without thermostatic control in the circulatory system of the engine a water heating unit would be impracticable and would no doubt lose its appeal.

In view of the prior art, the adoption by Caesar of a combination of known elements and devices taken from the prior art, without providing something new or novel, cannot sustain a patent.

The decree of the trial court is affirmed.