### BRIGGS v. CENTRAL ICE CO.

(Circuit Court, N. D. New York. February 20, 1893.)

#### No. 6,028.

PATENTS FOR INVENTIONS—INFRINGEMENT—ICE PLANERS.

In letters patent No. 367,267, granted July 26, 1887, to John N. Briggs, for an improvement in ice planers, the claim was as follows: "The combination with the cutter head and racks, directly attached thereto, of the guides for both cutter head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides, and engaging in said racks, and the levers or arms for operating said pinions, * * * so that the depth of the cut may be directly and positively regulated by means of the levers." *Held* that, in view of the prior state of the art, this claim must be limited to the precise mechanism described; and hence the patent is not infringed by a device wherein the cutter head is moved, and the depth of the cut regulated, by means of endless chains passing over sprocket wheels.

In Equity. Suit by John N. Briggs against the Central Ice Company to restrain the infringement of a patent. Bill dismissed.

Benjamin F. Lee, for complainant.
Edwin H. Brown and Frank L. Freeman, for defendant.

COXE, District Judge. This is an action for the infringement of letters patent, No. 367,267, granted to John N. Briggs, the complainant, July 26, 1887, for an improvement in apparatus for planing cakes of ice. It is not a pioneer patent, but relates only to improvements on the apparatus for which letters patent No. 346,576 were granted to the patentee August 3, 1886, in which a similar ice planer attached to an ice elevator is described and claimed. The object of the patent is to facilitate the adjustment of the planing device described in the prior patent and to render it more effective in operation. The usual method of elevating ice from the river or pond to the storing house is by means of an elevator or railway pro-

vided with endless chains carrying hold bars against which the cakes of ice are lodged; as the chains move the ice is drawn up the incline. For various reasons it is expedient that the blocks of ice should be planed down to a uniform thickness and grooved to prevent the ice from freezing into a solid mass in the storage house. It is also advisable so to construct the planing device that it can operate upon cakes of different sizes and remove layers of frozen snow and other impurities, which often differ in thickness. It frequently happens that worthless blocks, or blocks of different thickness, or blocks having a crust of frozen snow on the top are forced up the incline in close proximity. Again, it is not an unusual occurrence for ice to become dislodged from the hold bars and slide down the incline with great velocity, and, if it comes in contact with the planer in its downward passage, it is liable to destroy the entire machine. For these reasons it is necessary to elevate and lower the cutter bar rapidly.

For several years prior to the application for the patent (November 22, 1886,) it had been customary to accomplish these results by means of ice planers attached to the elevator. These machines were all provided with cutters and mechanism for raising and lowering the cutter carrying frame, consisting of pulleys and weights, levers, screws operated by bevel gearing, or other familiar equivalents for these old and well-known devices. The prior planers and the patented planer operate in substantially the same way. The blocks of ice are forced up the inclined elevator by the endless chains in the usual manner. The mechanism which holds the chisels or cutters is regulated by the operative in charge. As the ice is drawn upwards it encounters the cutters which penetrate the cakes to the required depth, removing any excess of thickness or impurities therefrom. The specification says:

"A little experience will enable the operative in charge quickly to determine at sight the best position for the cutter head during its operation on the approaching cake of ice, and said cutter head is under such perfect and positive control of the operative that he can easily maintain it at the position where its teeth first enter the cake of ice during the time required to effect the planing of said cake."

The only claim involved has reference to the problem of raising and lowering of the cutter bar by the attendant in charge. It is as follows:

"(1) The combination, with the cutter head and the racks directly attached thereto, of the guides for both cutter head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides and engaging in said racks, and the levers or arms for operating said pinions, all constructed, substantially as described, so that the depth of the cut may be directly and positively regulated by means of the levers, as herein specified."

A claim much broader in scope was originally asked for. The examiner rejected the broad claim as being anticipated by two prior patents and suggested a claim in the language quoted. The complainant acquiesced in this ruling. The defenses are lack of invention and noninfringement. In considering these questions it

is wise to keep in mind the precise nature of the patented improvement. The claim, it will be observed, is for a combination having the following elements: First, the cutter head; second, the racks directly attached to the cutter head; third, guides for both the cutter head and racks arranged perpendicularly to the plane of the elevator; fourth, pinions mounted on the guides and engaging in the racks; fifth, levers or arms for operating the pinions. All of these elements are to be constructed substantially as described, so that the depth of the cut may be directly and positively regulated by means of the levers in the manner specified.

Did it require an exercise of the inventive faculties to originate this combination? Ice elevators were concededly old; so were ice planers attached to ice elevators. The knives of ice planers, so attached, had been raised and lowered by mechanisms which are well-known equivalents for the apparatus of the claim. Every element of the claim, considered separately, was old, and the combination itself, when considered broadly, was anticipated by several prior structures. It is unnecessary to enter upon a discussion of the prior references which establish this proposition, for it was admitted by the patentee himself when he formally acquiesced in the disallowance of the broad claim and accepted the narrow claim of the patent. Royer v. Coupe, 62 O. G. 318, 13 Sup. Ct. Rep. 166. As favorable a statement as the patentee can expect regarding his contribution to the art, is that his machine is an improvement upon prior machines, in this, that his device for raising and lowering the cutter head operates with greater accuracy, ease and speed. There can be no pretense that it performs a new function or produces a new result. It may produce the old result in a better way, but this is all. If invention resides anywhere in the claim it must be in the substitution of the racks, pinions and guards for the elevating devices of the old machines. A rack and pinion has long been recognized as an equivalent for a lever, a pulley and weight and a screw. As almost every other equivalent had previously been used to raise the cutter carrying device, it is not impossible to imagine that the use of the rack and pinion might have suggested itself to a mechanic without any assistance from the prior art. But the patent to Butterfield, No. 24,076, dated May 17, 1859, shows racks and pinions used to raise and lower the cutter head of a wood-planing machine. The specification says:

"A is a sliding frame, to which is attached the knife, D. The pinion, C, raises or lowers the frame, A, regulating the contact of the knife, D, with the lumber to be planed as it passes through the machine over the rollers, E, E. * * * The knife, D, is adjusted or set by operating the pinion, C, and raising or lowering the frame, A."

Suppose a person engaged in the business of harvesting ice, who had been using the Rockland planer, the Smith planer or the Briggs planer of 1886, had consulted an intelligent mechanic, and, after explaining to him that the raising and lowering apparatus was defective for the reasons suggested, and after placing in his hands the Butterfield patent, had asked him to remedy the defects. Would not the mechanic have seen at a glance that as racks and pinions

operated successfully to raise and lower the knife in a wood planer, they would do the same thing in an ice planer? In other words, would one who took the racks and pinions of Butterfield and utilized them to elevate and lower the knife of an ice planer be entitled to a broad monopoly? Manifestly not. Heating Co. v. Burtis, 121 U. S. 286, 7 Sup. Ct. Rep. 1034; Derby v. Thompson, 61 O. G. 1950, 13 Sup. Ct. Rep. 181; Pomace Holder Co. v. Ferguson, 119 U. S. 335, 7 Sup. Ct. Rep. 332; Fox v. Perkins, 62 O. G. 160.[1] Enough has been said to demonstrate the proposition that the claim, to be sustained, must be limited to the precise mechanism described, and that, in no circumstances, can it be held to cover other improvements which adopt different though equivalent devices. See authorities cited in Hill v. Sawyer, 31 Fed. Rep. 282.

The court does not overlook the argument of popularity with the public which influenced, if it did not induce, the decision of the supreme court in favor of the barbed-wire patent. 12 Sup. Ct. Rep. 443, 143 U. S. 275. The difficulty here is, conceding that the Briggs planer has been accepted by the public to the exclusion of other planers, that it is by no means demonstrated that this popularity is due to the use of the combination of the claim involved in this suit. The defendant uses an ice planer for which two patents have been granted to George A. Birch, No. 436,492, dated September 16, 1890, and No. 447,000, dated February 24, 1891. The cutter head in defendant's planer is raised by means of endless chains passing over sprocket wheels. That these would be considered equivalents of the racks and pinions of the claim, broadly construed, need not be disputed. In the same sense they would be equivalents for the lifting devices of the prior structures. But with the limited construction made necessary by the prior art it is manifest that the defendant does not infringe. Indeed, even upon the complainant's theory, the argument to support infringement, though ingenious, is too strained and artificial to satisfy one whose only interest in the matter is to arrive at the truth. It sometimes happens, in patent litigation, that arguments which, apparently, satisfy the mind of the complainant's expert that the patent has been infringed, fail to convince the judge who tries the cause. In the defendant's planer there are no racks directly attached to the cutter head, there are no guides for both cutter head and racks and there are no pinions mounted on the guides and engaging in the racks. In short, the defendant does not infringe, unless a construction so broad as to invalidate it is placed upon the claim. The bill is dismissed.

[1] 52 Fed. Rep. 205.