## BRIGGS v. CENTRAL ICE CO.

### (Circuit Court of Appeals, Second Circuit. February 27, 1894.)

### No. 47.

PATENTS—ANTICIPATION—ICE PLANERS.
    In letters patent No. 367,267, granted July 26, 1887, to John N. Briggs
for improvements in apparatus for planing cakes of ice, the claim was
for the combination, with the cutter head and the racks directly attached
thereto, of the guides for both cutter heads and racks, arranged perpen-
dicularly to the plane of the elevator, the pinions mounted on said guides
and engaging in said racks and the levers or arms for operating said
pinions, so that the depth of the cut may be directly and positively regu-
lated by means of the levers. *Held*, that the patent is invalid, for the
combination claimed required only a modification—within the ordinary
skill of a mechanic—of the device for adjusting wood planers, for which
a patent was granted to T. B. Butterfield, May 17, 1859; the later patent
differing from the earlier only in the omission of a feed roller, located
above the cutter head, and designed to aid in moving the wood through
the planing machine.

Appeal from the Circuit Court of the United States for the North-
ern District of New York.

This was a bill filed by John N. Briggs against the Central Ice
Company for the infringement of a patent. There was a decree
below for defendant, (54 Fed. 376,) and complainant appealed. De-
cree affirmed.

Lee & Lee, (Benj. F. Lee, of counsel,) for appellant.

Waters, McLennan & Waters, (Edwin H. Brown, of counsel,) for
appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The learned judge who decided this
cause in the court below suggested in his opinion that it was
doubtful whether there was any patentable novelty in the com-
bination of the first claim of the patent, the only claim in con-
troversy; but he preferred to place his decision upon the ground
that the claim must, in view of the prior state of the art, be
limited to the combination of the precise devices of the patent,
and, upon such a construction, was not infringed by the apparatus
of the defendant. The claim is for a combination of devices
which are designed to facilitate the adjustment of the cutter or
planing tool in an ice elevator. In harvesting ice, it is desira-
ble to remove the snow and impurities which have accumulated
upon the upper surface, and it is convenient to do this after the
ice has been cut into cakes, and immediately before it is to be
stored in the ice house. It was customary to plane the ice, while
it was upon its passage by the elevator to the storehouse, by
means of cutting devices so arranged with reference to the carry-
ing instrumentalities of the elevator that, as the cakes were pre-
sented to the planing devices, a portion of the upper surface would
be removed. Prior to the application for the patent in suit, ice
elevators for carrying ice in blocks upon an inclined railway to

the storehouse, and provided with cutters for planing the ice while on its passage, were well known and had been described in numerous patents. The prior patents · describe several kinds of cutter-adjusting devices, consisting essentially of a cutter head, adapted to carry the planing tool, mounted above and extended over the track or guide way of the elevator, and means for raising and lowering it, so as to bring the planer in contact with the ice, graduate the depth of cut, and hold the planer to its work. The cutter-adjusting devices of the patent in suit consist of a cutter head adapted to carry the planing tool, and racks, pinions, and guide frames for adjusting and controlling the cutter head. The cutter head .is a cross shaft extending over the track and arranged so that its ends will play up and down in guide frames. The guide frames are slotted standards, and there is one on either side of the track, arranged perpendicularly to the plane of the track. Attached to each end of the cutter head is a rack and pinion, and these are connected together by a cross bar. The cross bar is provided with arms or levers for operating the pinions. The racks project from the ends of the cutter head, and are controlled by the guide frames so that their teeth mesh with the pinions. Thus the standards are guides for both the cutter head and the racks. The claim is as follows:

"1. The combination, with the cutter head and the racks directly attached thereto, of the guides for both cutter head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides and engaging in said racks and the levers or arms for operating said pinions all constructed substantially as described, so that the depth of the cut may be directly and positively regulated by means of the levers, as herein specified."

Assuming that the ice elevator, although not specifically mentioned, ought to be regarded as an element of the claim, and recognizing the fact, as we must upon the proofs, that the other devices of the claim were never before assembled together in an ice elevator, nevertheless, we are of the opinion that the claim is destitute of patentable novelty. It is conceded in the patent that the ice elevator, in which the cutter-adjusting mechanism is to be used, "is of the form commonly used for raising cakes of ice to the house in which they are stored." Not only was the ice elevator old, including, of course, its mechanism for carrying the ice to the planer, but planer-adjusting devices for performing in ice elevators the functions of the adjusting devices of the patent, were also old. Of the prior patents describing different kinds of planer-adjusting devices for ice elevators, it will suffice to refer to three. The patent of 1883 to Chaplin, No. 271,220, describes the elevator of the patent in suit, and planer-adjusting devices, which consist of a cutter head arranged over the track, guided by standards on each side of the track, and controlled by a lever and weights. The cutter head, instead of being a cross shaft, like that of the patent in suit, is a rectangular frame. The standards or guides, instead of being two in number, are four in number, one at each corner of the frame. The patent of 1884 to Smith, No. 310,093, describes the elevator. It de-

scribes, as the cutter-adjusting devices, a cutter head arranged over the track, hung by pivoted arms to an outer frame, and controlled by a lever. The outer frame is mounted in slotted standards, and can be raised and lowered by bolts. The lever plays in a sector, by which it can be locked at will, to hold the cutter head rigidly in place. When the cutter head is raised and lowered by the lever, it swings on the pivoted arms. The patent of 1885 to Loring & Giles, No. 329,400, describes the elevator. Its planer-adjusting devices are a cutter head arranged over the track, attached at each side to a vertical standard, and counterbalanced by weights. The adjusting devices of the first two of these prior patents do the same work, in substantially the same way, as the adjusting devices of the patent in suit. In the Loring & Giles apparatus they work automatically, and are designed to cut a definite depth into each cake of ice. In operation, the cakes of ice raise the cutter head, and after the planer has done its work the cutter head falls by gravity to its normal position. In the Smith apparatus the range of adjustment of the devices is not as great as in the patent in suit. In the apparatus of Chaplin they are not controlled so positively as in that of the patent in suit. It cannot be disputed, and, indeed, it is obvious, that the adjusting devices of the patent are preferable to those described in any of these prior patents. They enable the operator to do his work of planing the ice with more certainty, ease, and speed. Because this is so, we reach the conclusion that the claim is invalid with reluctance. But the patentee was not the first to use the adjusting devices of the claim for the purpose of enabling a planing tool to do its work. Precisely the same combination, found in the complainant's patent, of cutter head, guides, racks, pinions, and levers, is described in a patent for a planing machine granted May 17, 1859, to T. B. Butterfield. In this machine, which is a wood planer, there is a feed roller, located in the cutter head above the planing tool, which is designed to bear against the shaving and assist in moving the piece of wood through the machine. It is obvious that this device would be unnecessary in an ice-planing machine. It could be omitted without the slightest readjustment of the other parts. If retained, it would not affect their mode of co-operation. If omitted in the Butterfield machine, its absence would not affect in the least the co-operation of the parts for the adjustment of the planing tool. All the advantages ascribable to the patented combination are due to the assembling together of an old elevator and an old cutter-adjusting mechanism. This could be affected without requiring any modification of the parts which was not an obvious one, and within the ordinary skill of the mechanic. In contemplation of law, the patentee merely transported the devices of Butterfield into the old elevator, and cut away the useless feed roller. When thus assembled together, the elevating mechanism performs no new functions, and the adjusting cutter mechanism performs precisely the functions it did in the Butterfield machine. It is wholly immaterial that the adjusting devices of Butterfield were designed to be used in a machine for planing wood. The applica-

tion of an old organism to an analogous use is not patentable. Blake v. City and County of San Francisco, 113 U. S. 679, 5 Sup. Ct. 692; Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. 220; Steiner Fire Extinguisher Co. v. City of Adrian, 59 Fed. 132. It is not invention to use an old combination of devices in a new location to perform the same operations, when no changes or modifications are required to adapt it to the new use, or when only such are required as can be made by the exercise of ordinary mechanical skill. The case of Aron v. Railway Co., 132 U. S. 84, 10 Sup. Ct. 24, is an apposite illustration of the rule.

The conclusion that the claim is invalid renders it unnecessary to consider the question of infringement, and leads to an affirmance of the decree. The decree of the circuit court is affirmed, with costs.