BRIGGS v. DUELL, Commissioner of Patents.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

No. 43.

1. PATENTS—ANALOGOUS USE.
There is no invention in merely applying and adapting, to the planing and grooving of cakes of ice, mechanism previously used in the planing of wood.

2. SAME—REISSUE—APPARATUS FOR PLANING CAKES OF ICE.
The incorporation, into the first claim of the Briggs patent, No. 367,267, for an apparatus for planing cakes of ice (which claim was adjudged invalid by the circuit court of appeals), of new matter describing a cutter consisting of a number of points, which will not only cut, but groove, the ice in one operation, and of an ice elevator adapted to force the ascending cakes of ice into contact with the cutter, would not make the claim patentable, so as to warrant a reissue.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon appeal from a decree of the circuit court, district of Connecticut, dismissing the bill. 87 Fed. 479. The facts are sufficiently set forth in the opinion.

Benjamin F. Lee, for appellant.

W. A. Megrath, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. On July 26, 1887, a patent (No. 367,-267) was granted to the complainant for new and useful improvements

in apparatus for planing cakes of ice for storing. Upon this patent suit was brought against the Central Ice Company in the Northern district of New York to restrain infringement of its first claim. Judge Coxe, who heard the cause at circuit, held that there was no infringement. 54 Fed. 376. An appeal was thereupon taken to this court. The claim there in question read as follows:

"(1) The combination, with the cutter head and the racks directly attached thereto, of the guides for both cutter head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides and engaging in said racks, and the levers or arms for operating said pinions, all constructed substantially as described, so that the depth of the cut may be directly and positively regulated by means of the levers, as herein specified."

This court reviewed the state of the art, including patents to Chaplin (271,220), Smith (310,093), and Loring and Giles (329,400), and finding, in a patent to Butterfield (24,076, May 17, 1859), for a wood-plane attachment, the "same combination found in complainant's patent of cutter head, guides, racks, pinions, and levers," held that, in contemplation of law (of course, in fact, Briggs had never heard of Butterfield), the patentee "merely transported the devices of Butterfield into the old elevator, and cut away the useless feed roller." The conclusion was that the claim was invalid for lack of invention. Briggs v. Ice Co., 8 C. C. A. 480, 60 Fed. 87. The patentee thereupon applied for a reissue upon an application which contained several claims, of which the following only is now in controversy. For convenience of comparison, the new matter inserted in the claim is italicized:

"(3) The combination with the cutter head, and the racks directly attached thereto, of the guides for both cutter head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides and engaging in said racks, and the levers or arms for operating said pinions, *a cutter consisting of a number of points entering the ice in such a manner as not only to cut but to groove it at one operation, and an ice elevator adapted to positively force the ascending cakes of ice into contact with the cutter and groover,* all constructed substantially as described, so that the depth of the cut may be directly and positively regulated by means of the levers, *and the ice at the same time properly grooved for storage.*"

It will be perceived that the phraseology of this claim calls for two elements not enumerated in the first claim of the original patent,— the ice elevator, and the multipoint cutter and groover. It will be perceived, from an examination of our former decision, that the ice elevator, although not specifically mentioned, was regarded as an element of the claim. It was also understood that some kind of a cutter was necessary to make the machine practically useful, and to enable the operator to regulate the depth of the cut. In the proposed reissue the combination is restricted to a peculiar variety of cutter, which, however, was not in itself new. Briggs himself had shown it in the specifications of his patent, No. 346,576 (August 3, 1886), calling attention to the circumstance that such a cutter would groove the ice, as well as cut it, and in the reissue of this earlier patent (reissue No. 11,060, February 18, 1890) this double function of grooving and planing is made the subject of a specific claim. The application for a reissue of No. 367,267 (which application was filed

July 16, 1894) was rejected by the patent office, upon the authority of Briggs v. Ice Co., supra, as appears from the opinions of the examiners in chief and of the commissioner of patents.   The patentee thereupon appealed to the court of appeals of the District of Columbia, which affirmed the decision of the commissioner of patents.   9 App. D. C. 478.   Thereupon he filed a bill in equity for this decree, in accordance with the provisions of Rev. St. U. S. § 4915.   The cause came before Judge Townsend upon pleading and proofs.   The bill was dismissed (Briggs v. Duell, 87 Fed. 479), and from decree of dismissal this appeal is taken.

The argument has taken a somewhat wide range, embracing practically a reargument of questions passed upon in our opinion upon the original patent.   Upon this branch of the subject it will be sufficient to say that we see no reason to modify the opinion heretofore expressed.   It will be necessary only to examine the new facts upon which complainant relies to make out a case not covered, as he contends, by the former opinion.

1. Attention is called to the circumstance that, when the former opinion of this court was handed down (February 27, 1894, 60 Fed. 87), the supreme court had not decided Potts v. Creager (1895) 155 U. S. 597, 15 Sup. Ct. 194.   It is not thought, however, that that case lays down any new principles of law, nor that it has overruled the earlier decisions which were cited in Briggs v. Ice Co.   On the contrary, it indicates quite clearly that the question of so-called double use—whether, that is to say, the new use is so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill—is one dependent upon the peculiar facts of each case.   It would be difficult to find uses more analogous than we have here.   If the apparatus for raising and lowering had, in its earlier use, been applied, for instance, to the movement of ore buckets in a shaft, it might, perhaps, be urged that the analogy was imperfect; but here in both applications the apparatus moves a cutter (which is itself to remove surplus material) to the place where the operator wishes it to cut.   It would seem to make little difference that the workmen who plane wood do not plane ice.   In Potts v. Creager the supreme court approved their former decision in Brown v. Piper, 91 U. S. 40, where a patent for preserving fish for food purposes was held to be without patentable novelty, in view of an earlier patent for a "corpse preserver" used in the undertaker's art.   See, also, Stearns v. Russell, 29 C. C. A. 121, 85 Fed. 218; Rogers v. Fitch, 27 C. C. A. 23, 81 Fed. 959.

2. It is next contended that the new matter introduced in the claim removes it from the operation of the opinion in Briggs v. Ice Co.   As already pointed out, the express inclusion of the ice elevator as an element involves no change; it was read into the claim in our former opinion.   The addition of the peculiar cutter and groover of the patentee which had already, by his own act in taking out No. 346,576 (reissue No. 11,060), been made a part of the prior art, does not change the situation.   It adds nothing new to the combination, which remains a combination of old devices, just as it was in the original patent.

3. It is contended that undue weight was given to the Butterfield patent in our former opinion. The model, which was filed with application for that patent and which was damaged by the fire which occurred in the patent office in 1877, has been found, and the experts on both sides have testified as to the inferences which they draw from it. It exhibits a hole in the frame of the machine, and a slot in the knife-carrying frame. There is no reference to these in the specifications, nor are they shown in the drawings, nor is there anything in the patent to indicate what purpose they were intended to subserve. Complainant's expert draws the inference that they were devised so that a set screw might be used to clamp the knife-bearing frame after the racks and pinions had raised or lowered the knife to its desired position. Defendant's expert suggests that we may quite as fairly infer that they were adapted to receive "a rod or stop which might brace the frame, or hold the knife frame from falling upon the rollers at the bottom." In the absence of any reference to a set screw, either in the specifications, claims, or drawings, we are not inclined to give much weight to either of these inferences. Nor does the evidence satisfy us that the machine of Butterfield would be inoperative without a set screw. And, even if irregularities in the boards to be planed would at times destroy the adjustment of the knife (unless a set screw were used), as complainant's expert claims, by reason of the increased pressure of the plank against the feed roller, causing the latter to rise and carry the rest of the frame with it, that difficulty would disappear with the disappearance of the feed roller; and, as was stated in Briggs v. Ice Co., "it is obvious that the feed roller would be unnecessary in an ice-planing machine," where the substance to be cut is fed forward by the moving base on which it rests. The decree of the circuit court is affirmed, with costs.