JONES v. CYPHERS et al.

(Circuit Court, W. D. New York. February 18, 1902.)

No. 73.

1. PATENTS—SUIT FOR INFRINGEMENT—PLEADING—ANTICIPATION.

Prior patents relied on by a defendant in a suit for infringement as anticipations of the one in suit must be pleaded; otherwise they cannot be considered for that purpose, but only to show the state of the art, and to limit the claims involved.

2. SAME—INFRINGEMENT—INCUBATOR.

The Jones patent, No. 586,088, for an improvement in incubators, relating to their heating and ventilation, in view of the prior art, must be limited to the exact combination shown, which includes an inlet pipe passing directly from the external atmosphere to the interior of the egg chamber, and an exit pipe leading to the heating device, so that the exhaust of air from the chamber, to produce ventilation, is effected by the suction or draft caused by the heating device. As so construed, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 586,088, issued to Walter B. Jones July 6, 1897, for an improvement in incubators. On final hearing.

Charles A. Hawley, for complainant.
Osgood & Davis, for defendants.

HAZEL, District Judge. This is a suit in equity for infringement of United States letters patent No. 586,088, issued to Walter B. Jones July 6, 1897, and assigned by him to complainant. The patent relates to what are described as new and useful improvements in an apparatus for artificial incubating and brooding. Defendants admit that the exhibits in evidence (an incubator and brooder apparatus claimed by complainant to infringe the patent in suit) were made by them, and that they are engaged, as partners, in their manufacture and sale. The claims of the patent alleged to be infringed are 1, 2, 3, 9, and 14. They consist of a combination of elements involving a method of circulating heat or warm air from a source of heat in an incubating and brooding chamber to a heating device attached to the incubating and brooding apparatus, and communicating with the upper part of the chamber. More specifically, a fresh-air inlet pipe is so constructed as to communicate with the upper part of the chamber, whereby the fresh air is warmed before entering the chamber. The inlet pipe is so arranged and connected to the chamber, with an exit pipe leading to the lamp used as a heating device, as to result in controlling the entrance of fresh air into the chamber. As the fresh air is admitted through the inlet pipe, it occupies the space of the vitiated air drawn off by draft or suction caused by the heater. Complainant's expert says:

"The chamber or heater produces a rarification of the air adjacent thereto, and the colder or heavier air rushes toward it from below, or latterly toward it; and the means for heating is the element that produces the positive circulation of air from the bottom part of the chamber."

Complainant does not broadly claim a system of ventilation, as applied to an incubator and brooder. The necessity of such ventilation has long been understood and recognized. Different arrangements and devices for performing that indispensable function have been invented. The difficulty experienced in the use of the incubating apparatus, however, has been that at various conditions of outside temperature the efficiency and regularity of hatches were retarded. This was due to a failure to impart such air to the egg chamber as would maintain an unvarying temperature. The patentee, by his invention, proposes to obviate the apparent difficulties and inefficiencies of the prior art by claiming a combination of old and new elements, resulting in the adaptation of means for a constant and positive change of air in the incubator and brooder chamber. Claim 1 of the patent in suit reads as follows:

"An incubator or brooder comprising a closed chamber having a fresh-air inlet, means for heating the chamber, including a heating device and an exit pipe connecting said chamber with the heating device, whereby, owing to the draft caused by such heating device, a positive circulation of air within the incubator or brooder is produced, substantially in the manner described."

The second claim includes means for heating the fresh air before entering the chamber. Claim 3 describes a combination of elements whereby air is heated before it enters the chamber, and for withdrawing the same by suction after it becomes contaminated. Claim 9 describes the means employed to create the suction from the chamber to the lamp or heating device. Claim 14 regulates the quantity of air passing from the chamber to the heating device. The answer alleges aggregation of old devices, anticipation, and denies infringement. Defendants contend that all of the elements upon which are based the claims of the patent in suit are a mere aggregation of known elements; that by the assemblage of parts the patentee has merely aggregated various elements in his incubator and brooder, without causing them to perform by their united action any new function which they did not perform separately before. His union of forces is not productive of a patentable result. On the argument it was admitted by complainant that practically the only novelty of his claims is an exit pipe arranged to lead from the egg chamber to the heating device. He claims this exit pipe as the essential element of a combination, and that this feature, in conjunction with the other elements described in his claims, produces a vigorous, wholesome, and constant passage of air through the incubator and brooder chamber at a predetermined degree of heat, thus assuring a regular and effective operation of the apparatus at all seasons of the year. At the time complainant's application for patent was filed, the examiner of patents rejected his specific claims for a ventilating system. The Gouge and Hoadley patents for ventilating apartments and cellars were cited by the patent office in support of the contention that the claims for a system of ventilation resulting in a constant change of air were old and well known. The patentee insisted that the citations were erroneously urged against an invention in incubators and brooders; that to ventilate a house was not analogous to ventilating an incuba-

tor. The examiner of patents, however, rejected the claims of the patentee on the ground that, although a nonanalogous art, the citations in anticipation of the claims were proper, and that the art of ventilating a dwelling house was not distinct from the art of ventilating an incubator. On appeal from the decision of the examiner of patents, the board of examiners in chief sustained the decision. Subsequently the applicant was granted a patent on the claim for ventilating an airtight or closed chamber, to which fresh air enters from an inlet pipe heated at the top of the chamber, and is thereafter discharged or withdrawn by the suction caused by the heating device. The Schultz United States patent, No. 101,168, dated March 22, 1870, and the Vanderheyden United States patent, No. 504,544, dated September 5, 1893, were not cited or considered by the patent office at the time of filing the application containing the claims for ventilation covered by the patent in suit. These patents have not been pleaded by the defendants in anticipation. They were introduced in evidence by the defendants, and are now cited as completely anticipating the claims of the complainant's patent. Inasmuch as they were not pleaded by the defendant as in anticipation, these patents may only be considered to show the state of the art, and to construe or limit the claims involved. Rev. St. § 4920; Brown v. Piper, 91 U. S. 41, 23 L. Ed. 200; Grier v. Wilt, 120 U. S. 412, 7 Sup. Ct. 718, 30 L. Ed. 712. Complainant does not pretend that there is any substantial novelty in his claims in suit, provided the art of ventilating incubators or brooders is analogous to heating and ventilating houses or apartments, as described by the patents of Schultz and Vanderheyden. The proofs show that prior patents for incubating and brooding do not show a combination including a foul-air outlet leading to the exterior of the incubating chamber, and directly to the heating device, so as to afford a joint means of combustion and ventilation. No patents other than the Schultz and Vanderheyden patents need be considered. It is admitted by counsel and expert for complainant that these patents disclose, substantially, in principle and mode of operation, all the elements of the claim in suit. Complainant, however, contends that, although there are analogies between the mode of operation of heating and ventilating an incubator and brooder and a dwelling house, such appliances, suitable for economically hatching eggs, are not suitable, without change, for living apartments. It is quite true that vast differences exist in the appearance and construction of structures such as are disclosed in the Vanderheyden and Schultz patents and the incubator and brooder patent in suit. Nevertheless the Vanderheyden patent describes a substantially airtight living apartment, so that the warmth and ventilation artificially provided will alone affect its interior, and, as heretofore stated, has all of the essential elements combined by the complainant in his construction. The prime purpose of the patent in suit is similar to that of the Vanderheyden and Schultz patents, to wit, to create a system of ventilation which will insure an unchangeable degree of warmth to the chamber or compartment described in the respective patents. It seems to me, therefore, that the sole question here is whether the patents under consideration belong to a nonanalogous art. I am unable to discover that com-

plainant's invention performs any new or different functions than those disclosed by the prior art for warming and ventilating dwelling houses. An examination of the decisions rendered in analogous cases is convincing that by the use of the elements described and claimed by the patentee nothing new was created, worthy of the dignity of invention. Mann's Boudoir Car Co. v. Monarch Parlor Sleeping Car Co. (C. C.) 34 Fed. 130; Holmes Elec. Protective Co. v. Metropolitan Burglar Alarm Co. (C. C.) 33 Fed. 254; Briggs v. Ice Co. (C. C.) 54 Fed. 376; Briggs v. Duell, 36 C. C. A. 38, 93 Fed. 972; Stearns & Co. v. Russell, 29 C. C. A. 121, 85 Fed. 218; New Departure Bell Co. v. Bevin Bros. Mfg. Co., 19 C. C. A. 534, 73 Fed. 469. The incubator and brooder are merely a reduction in size of the chamber or compartment described by the Vanderheyden patent. Moreover, it appears with satisfactory clearness that a chamber or compartment constructed like that described in the Vanderheyden patent may be operated and is adapted for the purpose of incubating. The proofs show that a room of suitable dimensions for human habitation had been used with more or less success as an incubator. Defendants claim that a building 22 feet square by about 10 feet to the eaves, with ordinary pitched roof, has been successfully used for incubating. No difficulty was experienced in maintaining a proper temperature and ventilation. From the evidence in this case on this point, it may be fairly deduced that the system of ventilation described in the Schultz and Vanderheyden patents may be applied to the use of considerably smaller chambers or compartments than are described in the Schultz and Vanderheyden patents. These uses are precisely the same. The Vanderheyden house ventilating patent was granted several years prior to the patent in suit. Complainant is presumed to have had knowledge of this patent, and therefore it may be fairly assumed that a system of ventilation suitable for human habitation suggested, possibly, a better system of ventilation for an incubator. The patent can in no sense be regarded as a pioneer, and therefore its scope must be limited to a foul-air exit pipe leading directly to the lamp used for heating the egg chamber. The defendants having failed to plead the Vanderheyden and the Schultz patents, the invalidity of the Jones patent because of their existence is not in issue. Defendants' device for ventilation is somewhat different from that of complainant. The heating device has no connection with the incubator chamber. It takes its draft from the outside air, and delivers the foul air to the exterior of the chamber, having no connection or communication with the incubator chamber, or air contained therein. The heat from the air-heating chamber is controlled at the top of the heating device by an outlet which remains closed until the generated heat exceeds the normal. Then, by the opening of a regulable escape passage, the hot air escapes from the air-heating chamber directly to the atmosphere. A portion of the hot air, only, escapes from the air-heating chamber, which is immediately replaced by fresh air from the outside atmosphere, entering the air-heating chamber at the lower end. Defendants' proofs show that all of the fresh air entering the heating chamber does not pass into the incubator chamber, but only such portion thereof as may be required to replace the foul air

that has escaped. Obviously, defendants' construction neither contains a fresh-air inlet, nor an exit pipe connecting the incubator chamber with the heating device. It follows that the Jones patent must be so limited as to confine it to the exact combination shown, including an arrangement by which an inlet pipe passes directly from the external atmosphere to the interior of an egg chamber, and to a construction in which an exit pipe leads directly to a heating device, so that the exhaust of air from the egg chamber to produce ventilation is effected by the suction or draft caused by a heating device. Thus limited, the patent is not infringed. It is unnecessary to consider any other element of the claims.

A decree must therefore be entered dismissing the bill, with costs.