## WHITEHEAD & HOAG CO. v. BASTIAN BROS.

(Circuit Court, W. D. New York. October 1, 1908.)†

No. 277.

**1. PATENTS (§ 328\*)—INFRINGEMENT—BILL HOOK.**

The Studebaker patent, No. 615,921, for a bill hook combined with an advertising card, discloses novelty and patentable invention, but is of narrow scope, and is restricted by the prior art to the peculiar arrangement by which the eye in the hook enables the latter to lie flat against the supporting plate or to be held in a position at right angles to it. As so construed, *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.\*]

**2. PATENTS (§ 328\*)—INFRINGEMENT—BILL HOOKS.**

The Hornich patent, No. 789,218, for a bill hook, the principal feature of which is the method employed for locking the hook in its position on the supporting plate, discloses patentable novelty in such feature, and is entitled to a moderate range of equivalents. Also, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.\*]

In Equity. On final hearing.

Howard P. Denison and William A. Jones, for complainant.
Osgood & Davis, for defendant.

HAZEL, District Judge. The bill alleges the infringement of three letters, the Studebaker patent, No. 615,921, dated December 13, 1898, the Hornich patent, No. 653,296, July 10, 1900, and Hornich patent, No. 789,218, of May 9, 1905, now owned by complainant. The patents relate to improvements in bill hooks. The object of the patentee, Studebaker, was to construct an adjustable bill hook attached to a placard, and to construct it in compact form so as to facilitate distribution and to afford an economical, attractive, and useful advertising medium. The single claim of the patent reads as follows:

"An advertising article, consisting of a placard having a plate secured thereto; and a bill hook movably secured to said plate, the said bill hook having an eye, 5, and being adapted to be turned so as to lie flat in relation to said placard and plate when at its upper plane of movement, and to be held from thus turning by means of said eye when adjusted for use, substantially as and for the purpose specified."

The elements of the placard and plate or support for the hook secured thereto were not new at the date of the invention in suit, and the element of a movable bill hook having an eye secured thereto, the same being assembled to permit folding it for convenience in packing, distribution, or mailing, though new and novel, does not, in view of the antecedent art, entitle the patent to a broad construction. Although a patentable combination, because of the inclusion of a new element, was disclosed, yet I think the claim must be limited to a movable bill hook with an eye at its upper end and constructed so as to permit collapsing said hook or holding it in a position at right angles to the plate when used for the suspension of bills, documents, or other articles. There

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes
†Received for publication March 17, 1909.

was some novelty in the particular method of construction by which the patentee accomplished his intention to make a cheap bill hook combined with an advertising card, and adapted to be folded by moving the hook upward in the groove or guide of the plate, and in adjusting it to prevent lateral turning. It is shown that the eye, 5, at the upper end of the hook, coacts with the plate support when adjusted in position, and arrests turning the hook in any other direction. Such functional result was obtained by the opposed bearing faces or by lateral projections of the eye coming in contact with the plate. This, in my estimation, was the only novel feature that can fairly be found in the patent. It was old in the art to attach wire or metal hooks to a support or backing in such a way as to lie parallel therewith, and, further, to attach the hook at right angles to the support, backing, or plate when articles were suspended from the hook. In the prior patents to Putnam, Hubbard, Nottingham, and Johnson are shown hooks which may be folded for convenience in packing and turned to a right angle position for suspending articles therefrom. That such hooks relate to clothes hooks, as distinguished from hooks upon which bills or other articles may be suspended, is not thought of material importance. It makes no difference whether the hook is attached to a wooden, tin plate or card support, specially as its operation is not essentially different from the operation described in the prior patents. Jones v. Cyphers (C. C.) 115 Fed. 324. The claim of complainant that no metallic substance in place of the cardboard plate or backing is within the terms of the patent is unwarranted, and the claim is not limited to exclude a wood, rubber, or metallic backing, nor, indeed, is the patentee's design of printing advertisements on a paper backing or support a patentable element. Advertisements could easily have been placed upon the supports or backing for hooks of the prior art. There was no legal hindrance to such use, even though the idea of doing so did not originate with such patents. Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267. An inspection of the file wrapper would seem to support this construction of the claim, namely, that the patent must be restricted to the peculiar arrangement by which the eye in the hook enabled the hook to lie flat in relation to the support, and also to be held in position at right angles to the plate. In view of the Gatling patent, No. 447,565, dated March 3, 1891, it would seem to be an expansion of the claim in suit to hold the patentee a pioneer in the art, and to give the patent the broad construction contended for by the complainant. In the Gatling patent is described a fixed hook arrangement having at its upper end a so-called pocket in which a card, label, or advertisement may be held. It would seem, therefore, that Studebaker was not the first to use an advertising card or placard in connection with a bill hook. That he attached to his advertising card a movable hook, and adapted it to be folded flat or turned out at right angles (which is the distinguishing feature from the Gatling patent), will not allow giving the claim a liberal scope, in view of the weight which must be accorded other prior patents hereinbefore mentioned. Thus construed, the defendant is not an infringer of the patent in suit, for by its adaptation or bill hook arrangement the result is not brought about by equivalent

means, although its operation is substantially the same. Walker on Patents, 352, 353.

No testimony was given by complainant to show infringement by the defendant of the first Hornich patent, No. 653,296, and said alleged infringement, not being pressed, will not be herein considered.

The second Hornich patent, No. 789,218, is claimed by complainant to be an improvement of the said original bill hook in controversy. Claims 3, 4, and 5 thereof are involved. Such claims disclose a similar bill hook to that described in the Studebaker patent, except that, instead of having an eye at the upper end of the shank of the hook to prevent the hook from turning, an offset at one side of the axis is used. When the shank of the hook is turned downward in the channel or guide in the supporting plate, the offset or projection engages the notch or socket, locking the hook and preventing it from swinging. The claims in issue are for a specific method of constructing the bill hook in combination with a supporting plate, and in several particulars concededly include elements not found in the prior patents to Studebaker and to Hornich. The principal feature of the invention consists in the method employed for locking the hook in its position to prevent lateral or longitudinal movement. Considering the narrowness of the art, the bill hook in question was probably a slight improvement over the Studebaker and first Hornich patents. I think the claims are entitled to a moderate range of equivalents. At least, they should not be so narrowly construed as to deprive the inventor of what he has achieved, where it is clear that the defendant has evaded the patent and taken the substance thereof. Even though the second Hornich patent is merely an improvement of what in the art was known before, yet, having made a cheaper, more durable, or more perfect structure, his invention is entitled to protection, though, of course, not to that wide range of equivalents which would be accorded to a pioneer. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100. None of the patents of the prior art show the locking arrangement of claims 4 and 5, which was the element differentiating the structure from the Studebaker device, the first Hornich patent, and, in fact, the prior art. It is this element in the combination which produces the result. The eccentric portion in the side of the shank of the hook necessitates a socket or notch in the guide or rib extending down the middle of the plate or hook support to hold the hook in position and prevent it from moving upward or to the side. No such disclosure is made in the prior art. True, there are prior patents which show projections in the hook that coact with the socket to prevent lateral movements of the hook, but such locking means are not adaptable to complainant's structure. Hornich provided two thin supporting plates of similar dimensions, preferably of circular form, and placed them together one over the other. In the overlying plate he formed a groove or rib extending along the middle of the plate, having a socket or depression near the edge, the underlying plate being used to protect the cardboard from the strain and wear to which it is subjected by engagement and disengagement of the hook which lies in the socket.

Does the defendant infringe the claims? There was much discussion as to the scope of claim 3, which emphasizes the "co-operating, yielding connections between the two (the hook and the guide) for retaining the hook in adjusted position." The yielding connections mentioned are contained in the overlying plate at its edges, the fastening together of the two plates being so arranged as to produce such yielding when the shank of the hook is inserted in the groove. The defendant urges that this claim must be construed to mean a structure in which the socket is placed in the groove to prevent turning or swinging of the hook. In my estimation, it is wholly immaterial whether the socket is actually in the groove of the upper plate, or whether the lower plate is slightly grooved or recessed to retain the hook. In its structure the defendant employs two plates, the smaller superposed upon the larger. In the smaller or upper plate is a channel or guide in which the shank of the hook slides, as in complainant's device. On the shank of the hook a projection is formed which co-operates with the socket of offset placed in the under plate (not in the upper plate, as in the device of complainant), by which means the hook is locked when adjusted for use. The identical result of complainant's patent is attained by the defendant's arrangement, and no new object is achieved. In fact, the change or alteration of parts merely operates as a reversal of the specific means shown in the Hornich patent. Under these circumstances, as already indicated, the defendant's adaptation is a palpable evasion of complainant's principal element, the locking or adjusting means in question. Aside from what has been stated, it is not thought necessary to discuss claims 4 and 5, which with greater detail claim the specific method of construction of the structure in suit.

Complainant is entitled to a decree for injunction upon the involved claims of the Hornich patent, No. 789,218, and an accounting, and defendant is entitled to a decree of noninfringement of the Studebaker patent, No. 615,921. No costs to either party.