PERFECTION SPRING SERVICE CO. v. AMERICAN AUTO HEATER CO.,
Inc., et al.

(District Court, W. D. New York. May 1, 1916.)

No. 167B.

1. PATENTS ⬦⟝136—OMISSIONS—MODE OF RECTIFICATION.

The remedy for mistakes and omissions in description or claim of a patent is to surrender the original patent and apply for a reissue.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 198½; Dec. Dig. ⬦⟝136.]

2. PATENTS ⬦⟝141—REISSUE—SCOPE.

Where the original patent is surrendered and a reissue sought, the patentee cannot enlarge the scope of his claim, so as to include other inventions and devices made since the grant and in public use.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. ⬦⟝141.]

3. PATENTS ⬦⟝328—CLAIMS—INFRINGEMENT.

The Kempshall patent, No. 670,080, for a device for using the engine exhaust for heating motor carriages, particularly with reference to internal combustion engines, *held* limited, by the prior art, the wording of the claims, and the acquiescence of the patentee in the proceedings in the Patent Office to the exact combination shown, which consisted of two mufflers with an arrangement between the exhaust and the mufflers for using either by shutting off the connection independently of the other, and, as so limited, not to be infringed.

In Equity. Bill by the Perfection Spring Service Company against the American Auto Heater Company, Incorporated, and another. Bill dismissed.

Hull, Smith, Brock & West and Harold E. Smith, all of Cleveland, Ohio, and J. Wm. Ellis, of Buffalo, N. Y. (Melville Church, of Washington, D. C., of counsel), for plaintiff.

William Macomber, of Buffalo, N. Y. (Wilber E. Houpt, of Buffalo, N. Y., of counsel), for defendant company.

HAZEL, District Judge. We are herein concerned with the scope, validity, and infringement of the single claim of patent No. 670,080, granted to Eleazer Kempshall on March 19, 1901, relating to improvements in devices for utilizing engine exhaust for heating motor carriages, with special reference to engines of the internally explosive type. The object of the inventor was to use the products of combustion for warming the interior of the car by means of a heater or foot warmer placed therein.

---

At the date of the invention it was old to adapt to explosive engines a muffling device to reduce or silence the noise of discharging vapor into the atmosphere without increasing the back pressure on the engine. The patentee intended his adaptation, consisting of two mufflers, for use in connection with steam engines, as well as with engines of the explosive or gasoline type. Indeed, as bearing upon such dual use, the specification states:

"The form of engine shown is an internally explosive double cylinder gasoline engine, but my invention is equally applicable to engines in which steam is employed as the motive force, and also to engines in which only one cylinder is used."

There is nothing to indicate any limitation to a particular type of muffler or heating device. The invention in suit is for an additional muffler, in the form of a heat regulator, made to operate independently of the other, though both are connected by piping and valves adapted to shut off one muffler when the other is in use. Two engine cylinders, two primary mufflers, and two heating mufflers are described in the specification and drawings. The mufflers (9 and 14) are preferably divided in the middle of their length, each containing two valves, one for each exhaust; and in Fig. 2 are illustrated the two mufflers to which are attached a series of tubes arranged concentrically, each being perforated to permit the confined gases to escape through successive tubes into the open air. Each pair of mufflers is shown to be connected by independent connections with the upper cylinder, and may be cut off separately by valves, mufflers 9 and 14 being cut off from the upper cylinder 6 by valves 13 and 18 located between the exhaust 8 of said cylinder and the primary muffler 9 and the secondary muffler 14. When the interior of the car is being warmed, the valves of the primary muffler are cut off, and valves 17 and 18 of the secondary muffler are open. The single claim reads as follows:

"1. The combination, with an engine, of two mufflers adapted to receive the exhaust therefrom, one thereof situated to serve for heating purposes, independent connections between said mufflers and the exhaust of the engine, and valves for controlling each of said independent connections, whereby either one of said mufflers may be employed according as heating is desired, substantially as described."

The defenses are anticipation, and, mainly, a narrowness of the patent resulting from self-imposed limitations and from amendment in the Patent Office to secure the claim, in consequence of which defendants' device is no infringement thereof.

Upon consideration of the evidence, together with the file wrapper and contents, it has been determined that in the ascertainment of the scope of the claims we are not confined to muffling devices of the explosive engine type, but may consider mufflers generally as described in prior patents to Kilbourn, Fink, Schwarm, Freese, Michaels, Healy, and Pennington. See Jones v. Cyphers [C. C.] 115 Fed. 324, affirmed 126 Fed. 735, 62 C. C. A. 21. It is true there is no muffling device specified in the patent for use in connection with a steam engine; but, as heretofore pointed out, the reference in the specification to steam engines, as well as the title of the patent, would seem to indicate an intention to include such constructions in the scope of the invention.

236 F.—17

Furthermore, the patentee emphasizes the manner in which the primary and secondary mufflers are to be used in order to heat the interior of the car, and the wording of the claim indicates its allowance because of restrictions and limitations assented to by the patentee.

[1, 2] The original application for the patent had two claims, which, however, were rejected as involving nothing more than a duplication of the muffler device shown in the patent to Fink, No. 238,773, while the patent to Healy stated that it was customary to flow the exhaust gases from a motor either through a heating coil or through a separate muffler. The patentee by counsel insisted that his invention was different from the prior art as cited by the examiner, in that he described two mufflers and independent valves connected between the muffler and the exhaust of the engine, whereby either muffler could be brought into use as desired. Thus limited, the patent was allowed, and it would seem that patentable novelty resided simply in the means employed for using the valves and connections, so as to permit shutting off the primary muffler when using the heater. It must be admitted that such a limitation may not accord full justice to the patentee, who appears to have been the first to adapt for use a combination of two mufflers, one for silencing the noise from the exhaust, and the other for warming the interior of motor cars; but the equities are not on his side. He delayed 16 years before attempting to levy tribute on other devices for warming the interior of automobiles which have come into use since his invention; and the rule of law, that when a claim is clear and explicit the courts cannot alter it by enlargement, is, under the circumstances, properly invoked. The remedy for omissions and mistakes in description or claim is to be found in the Patent Office, through surrender and reissue. Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235. In such circumstances the patent law does not permit enlargement of the scope of the claims to include other inventions and devices, made since the grant and in public use. Railroad Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053.

[3] In such circumstances defendants contend that the very language of the claim qualifies the functions of the combined elements to achieve the result, in that its wording is, "whereby either one of said mufflers may be employed according as heat is desired." I think that to ignore the functional limitation, in view of the prior state of the art, would not be to interpret the claim, but to substitute a new one. E. & H. T. Anthony Co. v. Gennert, 108 Fed. 396, 47 C. C. A. 426; Thacher v. Transit Const. Co. (D. C.) 228 Fed. 905. But the complainant urges that the reason for the amendment in the Patent Office is not controlling; that the single muffler of the Fink patent was connected to the safety valve of a locomotive and not adapted to receive the exhaust from an engine cylinder, and that the words "according as heating is desired," in claim 1 as allowed, operated to broaden it to a use which required no separate use of the muffling device, but I do not agree with this contention. The patentee designed to adapt old elements in his combination to perform a new function, though similar functions were performed by such elements, somewhat differently arranged, in connection with locomotives and cars. Indeed,

prior thereto, in the patent to Merrill in 1864 is shown an arrangement of dampers and flues to permit waste heat to pass in connection with steam engines, locomotives, and cars. In the patent to Kilbourn (1877) is shown a system for heating cars from the locomotives, with the main pipe extending to the main exhaust, and the heater is provided with valves.

The Fink patent, cited in the Patent Office, was for a combined heater and muffler, and the noise of the steam was suppressed by passing it into the tender, where it was condensed and used for heating the feed water. Thus is shown a heater using the exhaust while the muffler silences the noise, functions performed by the combination claim in suit, and perhaps suggesting it to the patentee herein. In the Freese patent, No. 325,796, for a car heater, the exhaust steam passes into an exhaust pipe extending from the engine to the car, and having a muffler at its end; and a branch pipe leading from the exhaust heats the car, the steam then passing down and discharging into the muffler. There are two valves in such device, one in the exhaust, and the other in the heater pipe, and various of the elements of the Kempshall patent are present. It does not, however, anticipate the patent in suit, which, as shown, was for a new combination, including in an old combination two mufflers, instead of one, and connecting them by independent connections.

In the Michaels patent, No. 135,239, there is a valve for closing one passage and opening another, and vice versa, the pipes, couplings, and cylinder operating as a muffler; but such device does not have two mufflers, nor is the exhaust pipe from the engine connected at a point intermediate of the engine on the main muffler as in the claim in suit, and therefore it is not anticipatory. In the Scott patent, No. 381,647, there are devices into which the exhaust passes to pipe Z and discharges into the smokestack, where it is muffled and then passes back into the steam heater pipe, and thence to the cars. A valve is used to enable the engineer to shut off or turn on the exhaust. Complainant denies that pipe Z and the manner of discharging the exhaust operate as a muffler, but there is evidence that the arrangement causes an expansion of the steam, with the result that the noise of the steam is deadened or silenced.

The Healy patent, No. 491,482, is perhaps closer to the patent under consideration than any of the others mentioned. The combination shows several mufflers for receiving the exhaust from the engine and utilizing it for heating. Pipes b and k seem to correspond to the independent connections between the mufflers and the exhaust of the engine of the Kempshall patent, and there is one valve for controlling the connection. Complainant contends that the muffler of the Healy device is a condenser, and that the deadening of the noise is due to the liquefaction of the steam; but this is a negligible difference, and I think the disclosure of such patent and other prior patents clearly indicates that the improvement or modification described in complainant's patent was not of sufficient importance in the art to warrant granting to the claim such breadth as to cover defendants' device.

It follows that the claim in controversy is limited, by its wording

and by the acquiescence of the patentee in the proceedings in the Patent Office, to the exact combination shown, including the arrangement located between the exhaust and the muffler for using either muffler by shutting off either connection independently of the other.

Both the external and internal construction of defendants' heater is different from that of the heater in suit. The exhaust gases, when not used as a heating element, in defendants' apparatus flow directly to the primary muffler, the valve at such time being closed; but when heating is desired the valve is opened, thus enabling part of the gases to flow through the branch pipe to a heating coil extending to the casing in the car body, and thence to the open air. While it is true that the heating coil used by defendants in place of a secondary muffler somewhat decreases the noise, it does so only incidentally, being designed to function as a heater, and not as a muffler, or silencer of the exhaust. As defendants employ a different kind of valve, one that does not entirely close the main exhaust, it is unable to perform the function of the two valves of Kempshall, whereby the latter may at option use either one of the mufflers described in the patent according as heating is desired, and it does not infringe the patent in suit.

A decree dismissing the bill may be entered, with costs.